UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BARBARA A. EVANS-GRAY,                    )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )       No. 1:26-cv-52-TRM-MJD
                                          )
KOCH FOODS,                               )
                                          )
        Defendant.                        )

## REPORT AND RECOMMENDATION

This case is filed pro se and without prepayment of fees by Plaintiff Barbara Evans-Gray ("Plaintiff") against her former employer, Defendant Koch Foods ("Defendant"). The Court granted Plaintiff's application to proceed *in forma pauperis* ("IFP") on March 20, 2026 [Doc. 7 ("March 20 Order")]. In that same March 20 Order, the Court explained its obligation to screen actions filed by plaintiffs seeking IFP status pursuant to 28 U.S.C. § 1915 and outlined various deficiencies related to Plaintiff's claims as drafted. Rather than recommend Plaintiff's case be dismissed at that time, the Court allowed Plaintiff to amend her complaint. Plaintiff timely filed her Amended Complaint, which she incorrectly titled, "Affidavit." [Doc. 8]. The Amended Complaint is now likewise subject to screening.

## I.    STANDARDS

As set forth in the March 20 Order, a plaintiff may commence a civil action in federal court without prepaying the administrative costs of the suit, *i.e.*, proceed IFP, if the plaintiff demonstrates she is financially unable to do so. 28 U.S.C. § 1915(a). However, a district court is required to dismiss the civil action, or portion thereof, if the court determines the complaint is frivolous or fails to state a claim upon which relief can be granted, or if the IFP plaintiff seeks

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). To avoid dismissal under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). But it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358–59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

In applying these standards, the Court also considers that the pleadings of pro se litigants are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quotation marks and citations omitted). "[P]ro se litigants are not relieved of

2

the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).[1]

Finally, federal courts are courts of limited jurisdiction. When presented with a case, federal courts "presume" they lack jurisdiction until the party asserting jurisdiction demonstrates otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). If at any time the Court determines it lacks subject matter jurisdiction, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II.     ANALYSIS

### a.     Count I

In Count I of her Amended Complaint, Plaintiff alleges[2]:

**Count I: Statement of Facts Discrimination Title VII of the Civil Rights Act of 1964**

1.      I, Barbara A. Evans-Gray, began working for Koch Foods as a Document Control Person in the QA Department September 25, 2023. Koch Foods is a poultry processing plant with strict USDA guidelines.

2.      On September 26, 2024 I was cursed out in front of other employees by Superintendent Ben Bennett. Ben Bennett yelled and cursed me because of a prank played on him by another male manager. Ben has a documented history of bullying female employees. I reported him to HR personnel Syndey Lipenski. I met with Sydney and Kathy Rawlston QA Dept. Manager.

---

[1] Plaintiff attaches over 60 pages of exhibits to her Amended Complaint, which the Court has considered even though Rule 12(b)(6) standards govern the screening procedure. As this Court has explained: "On a Rule 12(b)(6) motion to dismiss, the Court normally has to confine its analysis to the allegations within the four corners of the complaint. The Court, however, can depart from this general precept and consider a document that is "attached to, incorporated by, or specifically referred to in the complaint[.]'" *Koshani v. Barton*, No. 3:17-cv-265, 2018 WL 3150345, at *3 n.2 (E.D. Tenn. June 27, 2018) (quoting *In re Unumprovident Corp. Secs. Litig.*, 396 F. Supp. 2d 858, 873 (E.D. Tenn. 2005)).

[2] When quoting Plaintiff's filings, the Court has made minor changes and corrections without the use of brackets. None of these changes or corrections alter the substance or meaning of Plaintiff's writing.

3.     QA Manager Kathy Rawlston ordered me to cease all communication with Ben Bennett and all other QA employees after this altercation. The inability to communicate with the QA Dept. Supervisor and other employees jeopardized my job because I could not complete my paperwork correctly when there were issues within the plant's processes. Communication is imperative for my QA checks being correct because of the strict guidelines for food processing.

4.     Following my report I experienced indifferent treatment, between myself and Ben Bennett's family member Tristan, hired under nepotism, (i) Tristan was allowed to make mistakes without punishment. I was written up for these same mistakes. Ben Bennett, covered and corrected Tristan's mistakes, or allowed him to falsify the documents without penalty. (ii) I was forbidden to speak with the QA employees and management which had a negative impact on my job performance. No one else was subjected to this type of treatment. I filed a formal charge with the EEOC 04/22/2025 (00703) (*See Exhibit Fa*) for racial discrimination because of the disparate treatment I experienced started 09/26/2024. A copy of this charge was Cc: Kendra Bishop . . . Russell Gray . . ., and Koch Foods . . . (*See Exhibit Fc*). I was issued a Notice of Rights 11/28/2025 (*See Exhibit Fd*).

[Doc. 8 at Page ID # 33].

Plaintiff does not allege any facts in Count I of her Amended Complaint to support a "plausible inference that she was discriminated against with respect to the terms and conditions of her employment because of her race," even though Plaintiff's April 2025 EEOC charge concerned only alleged racial discrimination. *See Robinette v. Promedica Pathology Labs*, No. 20-3338, 2021 WL 1158181, at *1 (6th Cir. Jan. 5, 2021) (citing 42 U.S.C. § 2000e-2(a)(1)). To the extent Plaintiff is attempting to assert a gender discrimination claim in Count I, she also fails to allege sufficient factual detail to state a claim. And she does not claim to have filed a charge with the EEOC regarding any alleged gender discrimination. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." (citations omitted)).[3]

Accordingly, Plaintiff's Count I should be dismissed.

---

[3] Plaintiff claims she received a right-to-sue letter from the EEOC concerning her racial discrimination charge. However, the letter she cites addresses a different EEOC charge [*See* Doc. 8 at Page ID # 33; Page ID # 52; Page ID # 58].

4

**b. Count II**

In Count II of her Amended Complaint, Plaintiff alleges:

**Count II: SPD ERISA SECTION 510 AND ERISA § 502(C)(1) and Americans with Disabilities Act (ADA) Medical Status**

1. Jan. 2025, I experienced a medical emergency with brain trauma (*See Exhibit A*). March 10, 2025, I requested employee benefits information for medical necessity (*See Exhibit B*).

2. The Defendant refused to provide my medical benefits information. March 28, 2025, I requested all employee benefits information once more (*See Exhibit C*). This refusal continued despite my repeated request. Koch Foods would not comply with federal law by giving me the benefits information. Koch Foods actions were so egregious it required federal intervention. I was forced to file a complaint with the Department of Labor. The Defendant would not have released any information to me on July 21, 2025 (*See Exhibit D*). I received this information 90 days after my plan was terminated. Medical benefits are retro-actively canceled to Feb. 09, 2025 (*See Exhibit Hd*). I was notified of my plan termination July 24, 2025, five days after the DOL released the SPD (*See Exhibit Hd*).

3. The denial of benefits happened because I reported Ben Bennett to HR, the cancellation took place once Koch Foods received notice of my formal charge of racial discrimination April 22, 2025. The EEOC documents were Cc: to Kendra Biship, Russell Gray, and Koch Foods April 22, 2025. EEOC rules that an employer must receive the formal charge within 10 days of filing. Kendra Bishop's May 6, 2025, email notice of benefit cancelation was within a 14-day temporal proximity of my filing. (*See Exhibits E*).

[Doc. 8 at Page ID # 34].

The nature of any ADA claim in Count II is unclear. Plaintiff implies some sort of retaliatory action—"The denial of benefits happened because I reported Ben Bennett to HR"—but she does not allege any facts to suggest Plaintiff's alleged treatment after she reported Mr. Bennett related in any way to an alleged disability. *See Rorrer c. City of Stow*, 743 F.3d 1025, 1046-47 (6th Cir. 2014) (explaining that that the ADA is not a "catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA" (citation omitted)). Also, Plaintiff's April 2025 EEOC charge does not reference disability or the ADA [Doc. 8 at Page ID # 53–54].

Plaintiff also appears to be attempting to assert a claim under ERISA § 502(c)(1) related to Defendant's alleged refusal to provide her with "medical benefits information." [Doc. at Page ID # 34]. ERISA § 502(c)(1), codified at 29 U.S.C. § 1132(c)(1), "provides penalties for an administrator's refusal to supply required information." *Bragg v. ABN AMRO N. Am., Inc.*, 579 F. Supp. 2d 875, 899 (E.D. Mich. 2008). It provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100.00 a day . . . .

29 U.S.C. § 1132(c)(1).

In support of her Count II § 502(c)(1) claim(s), Plaintiff cites to an email she sent to Kendra Bishop on March 10, 2025: "Good morning Kendra I have checked on my STD.[4] I asked you about earlier because this [i]s the message I'm getting. Can you tell me anything about it. Than[k] you[.]" [Doc. 8 at Page ID # 42]. Attached to the March 10 email is an undated message titled, "Short-term disability summary," which reads: "Your employer manages your benefits. Please contact them for an up-to-date version." [*Id.* at Page ID # 43–44]. Plaintiff also cites an email she sent Ms. Bishop on March 28, 2025, which reads: "Good afternoon Kendra. Does Kochs have any information on what my insurance covers? Such as critical illness coverage. I need to know where or how I can get total information on all of my coverage." [*Id.* at Page ID # 47]. The record does not reflect whether Ms. Bishop responded to either of these emails. At some point, Plaintiff made a request for information to the Department of Labor ("DOL"), and on July 21, 2025, the DOL provided her with the "Summary Plan Description (SPD) and the Plan Document (PD) for the Koch Foods Incorporated Employee Benefits Plan" [Doc. 8 at Page ID # 49].

---

[4] Short-term disability benefits

Section 1024(b)(1) of ERISA lists the specific documents that a "plan administrator" is required to produce when a plan participant or beneficiary makes a "written request." These documents are: "the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Crucially, the "effect of sections 502(c)(1)(B) and 104(b)(4) is to create statutory liability when, and only when, **a plan administrator** fails to provide [one of the enumerated documents] upon written request." *Middlebrook v. St. Coletta of Greater Washington, Inc.*, 2010 WL 3521760, at *3 (E.D. Va. Sept. 7, 2010) (emphasis added; alteration in original). "Additionally, the written notice must give the plan administrator **clear notice of the information the plan participant seeks**." *Id.* (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 655 (4th Cir. 1996)).

Plaintiff does not allege that Defendant is the plan administrator. Moreover, the Court finds Plaintiff's requests are not sufficiently clear to give notice to Defendant to provide specific documents. In the first email, Plaintiff asks whether Ms. Bishop can "tell [her] anything" about a message she had received regarding her short-term disability benefits [Doc. 8 at Page ID # 42]. The second email is a closer call, but even then, Plaintiff does not actually request any documents: "I need to know where or how I can get total information on all of my coverage." [*Id.* at Page ID # 47]. *See Reichert v. Whirlpool Corp.*, No. 3:18-cv-00001, 2020 WL 5877132, at *4 (M.D. Tenn. Oct. 2, 2020) (written communication insufficient to "trigger ERISA penalties" where the plaintiff "attempted to get *information* regarding his benefit prior to the August 15 letter to the Plan Administrator," but "he made no other written request for *documents*." (italics in original)); *see also Butler v. FCA US, LLC*, 706 F. App'x 256, 259–60 (6th Cir. 2017) (finding no error in district court's denial of § 1132 penalties where the plaintiff "did not request any specific documents at all," but rather requested "information regarding the Total Permanent Disability Benefit").

7

Plaintiff also does not allege any facts to support a claim that Defendant retaliated against her in violation of ERISA after she contacted the DOL. For example, she does not allege Defendant was even aware of Plaintiff's contact with the DOL or the fact that the DOL sent Plaintiff benefits information. Plaintiff cites a letter from Defendant dated July 24, 2025 (presumably as evidence of temporal proximity), but this letter was clearly issued in connection with the exhaustion of Plaintiff's company leave on July 24, and not as a hasty effort to retaliate after the DOL sent Plaintiff a letter on July 21. [*See* Doc. 8 at Page ID # 75 & Page ID # 89]. Again, Plaintiff alleges no facts that could support a plausible inference to the contrary.

Accordingly, Plaintiff's Count II should be dismissed.

**c.     Count III**

In Count III of her Amended Complaint, Plaintiff alleges:

**Count III: Wrongful Termination Americans with Disabilities Act (ADA)**

1.     On October 2, 2025, I was terminated (***See Exhibit G***). Nov. 17, 2025, I filed a second charge of retaliation for Wrongful termination and failure to uphold fiduciary duties (03354) (***See Exhibit Fb***).

2.     As a result of Koch Foods' deliberate retaliatory actions, I lost insurance coverage (***See Exhibit Hd***) which has caused a delay in medical treatment, severe emotional distress, and extreme financial strain which has halted my recovery process.

3.     I received three ADA notices from Tomorrow Green on June 10, 2025 (***See Exhibit Ia***), August 12, 2025 (***See Exhibit Ib***), and August 13, 2025 (***See Exhibit 1c***) all containing the same incorrect information on ADA and FMLA. I responded to Tomorrow's email by questioning the incorrect information on August 12th and 13th of 2025 (***See Exhibits Ib and Ic***). Kendra Bishop sent an email on August 27, 2025, stating that the previous three emails sent by Tomorrow Green were confusing (contained misinformation) (***See Exhibit Id***); which is an admission of fiduciary failure. I tried responding to Kendra Bishops' ADA email right away but got an automated out of office response. I then emailed Starr Lopez concerning the situation (***See Exhibit If***). I was in communication with three HR persons pertaining to the (ADA) and (FMLA) notices. I got no response back. There was a complete breakdown of communication and a Lack of ADA Interactive Process. I was terminated for failure to return to work from leave. I was never released from my

doctor to return to work. No interactive process was offered. Only termination. (***See Exhibits G***).

4.    I did not receive an Election notice for COBRA after my October 2, 2025 termination. The Defendant sent general COBRA information on May 20, 2025 (***See Exhibit Ha***), June 03, 2025 (***See Exhibit Hb***) and July 24, 2025 (***See Exhibit Hc***) prior to my termination but after my benefits ended which was a different but separate qualifying situation for those Elections to be sent.

5.    Because no valid Election Notice was provided post-termination, I was unable to timely elect continued health coverage, leading to inability to get prescriptions, receive necessary testing, and cover out of pocket expenses.

[Doc. 8 at Page ID # 34–35].

Regarding her ADA claim for "wrongful termination," Plaintiff alleges she was injured in January 2025 (as shown by medical records dated August 28, 2025 [Doc. 8 at Page ID # 40]). On February 20, 2025, Ms. Bishop notified Plaintiff that she was approved for FMLA leave through April 24, 2025, and that if Plaintiff needed to extend her leave beyond that date, "we will discuss your options at that time." [*Id.* at Page ID # 44]. On March 26, 2025, Plaintiff emailed Ms. Bishop to request an extension beyond April 24; Ms. Bishop responded that Plaintiff "need[s] to call FMLA," and Ms. Bishop gave Plaintiff the phone number to call [*id.* at Page ID # 47]. On May 7, Ms. Bishop informed Plaintiff she "will now be put on Company leave 30 days at a time up to 90 days," and that Plaintiff needed to submit documentation to extend her leave past May 30 [*id.* at Page ID # 51]. The May 7 email states that Plaintiff's benefits "have ended." [*Id.*]. Plaintiff exhausted her Company leave on July 24, 2025 [*id.* at Page ID # 89].

Plaintiff alleges that during June and August 2025, she received letters from individuals within Defendant's HR department, "all containing the same incorrect information on ADA and FMLA[.]" [*Id.* at Page ID # 34]. In response to Plaintiff's inquiries about the letters, Ms. Bishop acknowledged "there may have been some confusion" and so Ms. Bishop attached a "corrected letter," dated August 27, 2025 [*id.* at Page ID # 88]. Plaintiff does not specify what was confusing

or incorrect about the earlier letters. As far as the Court can tell, it appears the mistakes are limited to incorrect dates for when Plaintiff exhausted her FMLA leave. Regardless, Ms. Bishop's letter states that if Plaintiff is "unable to return to work from [her] FMLA leave of absence, [she] may be able to receive a reasonable accommodation including return to work accommodations[] and/or additional leaves of absence" in accordance with the ADA [*id.* at Page ID # 89]. The letter instructs Plaintiff to contact Ms. Bishop "immediately" and "within five (5) business days" if Plaintiff would like to request an accommodation under the ADA [*id.*at Page ID # 90]. The letter further states that Plaintiff's benefits "have been cancelled, unless [Plaintiff returned] to work," and that, if Ms. Bishop did not hear from Plaintiff within ten days, Ms. Bishop would presume Plaintiff had abandoned her employment.

Plaintiff contends she attempted to respond to Ms. Bishop's letter immediately, but she "got an automated out of the office response." [*Id.* at Page ID # 90]. On August 28, 2025, Plaintiff emailed Starr Lopez, who also worked in Defendant's HR department: "Good afternoon Starr. I emailed Kendra [Bishop] earlier today. I also left a message on her VM. My neurology appointment was today. My neurologist couldn't complete the accommodation forms b/c I still need more testing." [*Id.* at Page ID # 91]. Plaintiff was terminated from employment on October 2, 2025, for "Failure to return from Leave." [*Id.* at Page ID # 60]. Plaintiff continued to receive long term disability benefits until January 6, 2026 [*id.* at Page ID # 93].

"Under the ADA, an employer cannot discriminate against a qualified individual on the basis of disability in regard to the terms, conditions, privileges, or termination of employment." *Kindred v. Memphis Light, Gas and Water*, No. 22-5360, 2023 WL 3158951, at *6 (6th Cir. Feb. 27, 2023) (citing 42 U.S.C. § 12112(a)). "An employer discriminates within the meaning of § 12112(a) when it fails to make 'reasonable accommodations to the known physical or mental

limitations' of an otherwise qualified employee, unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of the business.'" *Kindred*, 2023 WL 3158951, at *6 (citing 42 U.S.C. § 12112(b)(5)(A)). To establish a prima facie case of failure to accommodate under § 12112(b)(5)(A), an employee must show:

> (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified for the position, such that she can perform the essential functions of the job with or without a reasonable accommodation; (3) the employer knew or had reason to know of her disability; (4) the employee requested an accommodation; and (5) the employer failed to provide a reasonable accommodation thereafter.

*Kindred*, 2023 WL 3158951, at *6 (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007)). While these are "evidentiary standards" not pleading requirements, they "do provide overarching guidance as to what allegations would or would not entitle [a plaintiff] to relief under the law, which Rule 8(a)(2) and 12(b)(6) require[.]" *Dickson v. Green Dot Public Schs. Tenn.*, No. 22-cv-2070, 2022 WL 4285554, at *4–5 (W.D. Tenn. June 27, 2022), report and recommendation adopted, 2022 WL 3931462 (W.D. Tenn. Aug. 31, 2022).

As set forth above, Plaintiff alleges she reached out to HR after receiving the letters in June and August 2025, but she does not allege that she actually requested an accommodation at that time.[5] Indeed, she specifically alleges her doctor "could not" complete the accommodation forms. At best, Plaintiff's August 28 email to Ms. Lopez could be interpreted as a request to extend her previously granted leave for an indefinite period of time, which is not a reasonable request. *See Kindred*, 2023 WL 3158951, at *6 ("[W]here an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite." (quoting *Maat v. Cnty. of Ottawa*, 657 F. App'x 404, 412 (6th

---

[5] Of course, Defendant's actions in granting Plaintiff over five months of FMLA and Company leave constitute accommodations for the period of time before Plaintiff was terminated.

11

Cir. 2016))); *see also Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020) (emphasizing that "a key requirement" of a failure to accommodate ADA claim is that the plaintiff proposed a "*reasonable* accommodation" (italics in original)).

Defendants' alleged lack of response to Plaintiff's inquiries is problematic, to be sure. However, even now, Plaintiff does not allege that she could perform her job or that she sought a defined period of extended leave, and "the law does not require an employer to wait for an indefinite (or unlimited) period of time for an accommodation to achieve its intended effect[.]" *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 853 (M.D. Tenn. Jan. 4, 2016).

### d. Count IV

In Count IV of her Amended Complaint, Plaintiff alleges the following:

**Count IV: Retaliation under Title VII and ERISA Section 510: Breach of Fiduciary Duty, ERISA § 502(c)(1) and ERISA Sec. 4074(a)(1) (29 U.S.C. § 1104(a))**

1.      [A] I requested my benefit information on March 10, 2025 and again on March 28, 2025. Under 29 U.S.C. § 1132(c)(1) Koch Foods was legally required to provide these documents within 30 days of request. Defendant failed to uphold their fiduciary duties to inform me of benefits by releasing the SPD and properly notifying me of my insurance cancellation. These were materially adverse actions. I filed an EEOC charge on Nov 11, 2025 (*See Exhibits Fb and Fd*). Violation of ERISA 502(c)(1)—Failure to Provide Plan Documents: On March 10, 2025 I made a written request to Koch Foods HR for copies of the SPD and again March 28, 2025. The 30-day statutory period expired on [April 9, 2025]. April 10, 2025 the Defendant officially entered the ERISA violation period.

2.      The Defendant continued to withhold this critical medical information for a total of [103 days], until it was compelled to release the documents on [July 21, 2025] following an investigation by the U.S. Department of Labor (DOL) (*See Exhibit D*). This delay from April 10, 2025 to July 21, 2025 wasn't just a technicality, it was a materially adverse action of 103 days of non-compliance, that caused me physical and emotional harm by intentionally interfering with my ability to understand my disability rights and delaying my recovery. Koch Foods "willfully and in bad faith" withheld legally required documents to prevent me from exercising my rights while being discriminated against. The Defendant refused to offer me any benefit information but for the intervention of the DOL on July 21, 2025. This delay caused me mental stress, fear, physical decline, and financial ruin.

3.       [B] Koch Foods failed to provide COBRA notification after my October 2, 2025 termination (***See Exhibit G***).

4.       I should have received a second COBRA notice following my October 2nd termination, because it was a different qualifying event. Legal Deadline: November 15, 2025, the Defendant had 44 days to send me a specific COBRA Election Notice after termination. They have yet to send that information, but cannot rely on old information sent for my decline in work hours due to the two situations being separate and different.

5.       [C] The misinformation letters sent by Tomorrow Green is considered material misrepresentation regarding my (ADA) and (FMLA) and is a breech in fiduciary duties. These letters prejudiced my ability to make correct decisions causing confusion concerning my health and disability benefits. I did not receive corrected information pertaining to these letters until August 27, 2025 (***See Exhibit Ie***). This correction took more than 2 months from the first letter sent home June 10, 2025. 08/27/2025 Kendra Bishop Complex Human Resources Manager, sent an email acknowledging the erroneous information sent in three separate certified letters by Tomorrow Green, which is an admission of fiduciary failure (***See Exhibit Id***).

6.       My LTD was canceled Feb. 1, 2026 (90 days following my termination), a post termination act of retaliation intended to cause me financial hardship for my prior complaints (***See Exhibit J***).

[Doc. 8 at Page ID # 35–36].

Plaintiff's Count IV claim concerning Defendant's alleged failure to provide her with "benefit information" in response to her March 2025 requests is addressed above in connection with Count II. Count IV should be dismissed in this regard for the same reasons as set forth in the Court's discussion of Count II.

Plaintiff also alleges Defendant violated its fiduciary duties under ERISA by not sending her an additional "Election notice" for COBRA[6] benefits after Plaintiff was terminated on October 2, 2025. She acknowledges she received "general COBRA information on May 20, 2025, June 3,

---

[6] Consolidated Omnibus Budget Reconciliation Act

2025, and July 24, 2025," but she claims those notices were for "a different but separate qualifying situation for these Elections to be sent." [Doc. 8 at Page ID # 35].

For COBRA purposes, "the term 'qualifying event' means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary: . . . (2) the termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." *Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972, 980 (6th Cir. 2007) (quoting 29 U.S.C. § 1163). "Thus, an employee's termination for reasons other than gross misconduct would constitute a 'qualifying event' if the termination would result in a loss of coverage absent COBRA continuation benefits." *Jordan*, 257 F. App'x at 979.

Here, Plaintiff does not allege that her termination would result in a loss of coverage absent COBRA benefits. Plaintiff's non-COBRA benefits terminated at least as early as May 7, 2025, when she began her term of Company leave [*see* Doc. 8 at Page ID # 51]; and her participation in COBRA benefits ended on July 24, 2025, after she failed to pay the premiums and the grace period expired [*id.* at Page ID # 75]. *See* 20 C.F.R. § 54.4980B-4 ("For this purpose, to lose coverage means to cease to be covered under the same terms and conditions as in effect immediately before the qualifying event."); *see also Jordan*, 257 F. App'x at 980 (finding no qualifying event where the plaintiff "lost his coverage before his termination" due to his "failure to pay his premiums").

Plaintiff also briefly references the June and August 2025 HR letters as reflecting a breach of Defendant's fiduciary duty, and the cancelation of her long-term disability benefits as reflecting "a post termination act of retaliation intended to cause me financial hardship for my prior complaints." [Doc. 8 at Page ID # 35–36]. Simply put, these vague allegations are insufficient to state a claim, even at this preliminary screening stage.

14

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS**[7] that Plaintiff's claims be **DISMISSED** and this case **CLOSED**.

ENTER:

/s/ _____
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).